UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONDI NERI,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:22-cv-00385-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 11). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 7).

Plaintiff presents the following issues:

1. Whether the ALJ properly classified Plaintiff's past work.

2. Whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction.

3. Whether the ALJ properly evaluated the treating medical source opinion of Plaintiff's primary care physician, Christine Battaglia, D.O.

(ECF No. 11, p. 10).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

# I. ANALYSIS

## A. Past Relevant Work

Plaintiff challenges the ALJ's step four finding that she was "capable of performing past relevant work as a cashier." (A.R. 29). She argues that the ALJ erred by classifying her past work "according to its least demanding function." (ECF No. 11, p. 11).

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)). "A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). The Dictionary of Occupation Titles (DOT) is "the best source for how a job is generally performed." *Pinto*, 249 F.3d at 845.

"In classifying prior work, the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion. It is error for the ALJ to classify an occupation 'according to the least demanding function.'" *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citing *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir.1985). However, the ALJ does not err when classifying a job based on the least demanding function if it is the function "that the claimant actually performed most of the time" and "the DOT defines the claimant's past job as requiring only that least demanding function." *Stacy v. Colvin*, 825 F.3d 563, 570 (9th Cir. 2016).

Despite the claimant's burden at step four, "the ALJ still has a duty to make the requisite factual findings to support [her] conclusion." *Pinto*, 249 F.3d at 844. Moreover, where the evidence is ambiguous, the ALJ has the independent duty to fully and fairly develop the record, which "extends to the represented as well as to the unrepresented claimant." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's decision regarding a claimant's past relevant work must be supported by substantial evidence, which "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" when considering "the record

1 as a whole." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993) (per curiam).

2     Plaintiff's earning records show employment at Dollar General between 2012-2014. (A.R.
3 246). Plaintiff's work history report listed her job title as a manager with the following duties:
4 "[r]eceived merchandise, stocked shelves, POG resets, cashier, bagged groceries, wrote reports,
5 shift money counts, produce, gather baskets, frozen food stocking." (A.R. 277, 279). For this job,
6 Plaintiff said she had to walk, stand, and handle, grab, or grasp big objects during her whole shift.
7 (A.R. 279). She had to kneel and crouch for 4-5 hours per shift. (A.R. 279). As for sitting, she
8 wrote, "during lunch." (A.R. 279).

9     At the administrative hearing, the ALJ asked Plaintiff about her work at Dollar General.
10 (A.R. 43). Plaintiff stated that she "was a clerk and a night manager," being a clerk for a year and
11 a half and a night manager for the last nine months. (A.R. 43). For her clerk duties, Plaintiff stated
12 she performed customer service and checking and bagging. (A.R. 43). For her night manager
13 duties, she stated she performed checking, supervising, banking, and closing and locking up.
14 (A.R. 43-44). For both clerking and managing, she stated that she was primarily on her feet. (A.R.
15 43, 45).

16     Citing Plaintiff's work history report and hearing testimony, the ALJ characterized
17 Plaintiff's work at Dollar General as a cashier position,[1] concluding that she could perform such

---

[1] The DOT 211.462-010 description for this cashier position is as follows: "Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier

1  past relevant work "as generally performed in the national economy." (AR 30). Informing this
2  decision was the vocational expert's testimony that a hypothetical individual that "requires the
3  ability to sit or stand and is anticipated to have no more than five percent of the work day off task
4  for changing position" could perform the job, albeit with a "50% [reduction] of the labor market."
5  (A.R. 72). Pertinent here, the ALJ determined, as part of Plaintiff's RFC, that she "[r]equire[d]
6  the ability to sit or stand at will and is anticipated to have no more than 5% of the workday off
7  task for changing positions." (ECF No. 23).

8        The parties dispute what Plaintiff's work at Dollar General mostly entailed. Primarily
9  relying on Plaintiff's work history report, Plaintiff argues that cashiering was just one of the many
10 tasks that she performed and her other duties, *e.g.*, bagging, stocking, and gathering baskets,
11 would not allow her to sit or stand at will as required by the RFC. (ECF No. 11, p. 12). Moreover,
12 Plaintiff contends that state agency reviewers more appropriately categorized her past work as a
13 sales clerk,[2] which includes duties such as stocking merchandise, setting up displays, and
14 customer service. (ECF No. 11, p. 12, citing A.R. 93, 145). Plaintiff argues that, by classifying
15 her past relevant work as cashier, the ALJ improperly assessed her duties according to her least
16 demanding function—cashiering—and perhaps the only one that would permit her to sit or stand
17 at will.

18       Primarily relying on Plaintiff's testimony at the hearing, Defendant argues that the ALJ's
19 past-relevant-work finding was based off Plaintiff's position as a clerk, not her later position as a
20 manager. (ECF No. 13, p. 5). And because Plaintiff herself testified that her clerking duties were

---

(amuse. & rec.)."

[2] The DOT 290.477-014 description for this sales clerk position is as follows: "Obtains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store such as tobacco shop, drug store, candy store, or liquor store: Stocks shelves, counters, or tables with merchandise. Sets up advertising displays or arranges merchandise on counters or tables to promote sales. Stamps, marks, or tags price on merchandise. Obtains merchandise requested by customer or receives merchandise selected by customer. Answers customer's questions concerning location, price, and use of merchandise. Totals price and tax on merchandise purchased by customer, using paper and pencil, cash register, or calculator, to determine bill. Accepts payment and makes change. Wraps or bags merchandise for customers. Cleans shelves, counters, or tables. Removes and records amount of cash in register at end of shift. May calculate sales discount to determine price. May keep record of sales, prepare inventory of stock, or order merchandise. May be designated according to product sold or type of store."

just customer service and checking and bagging, it was reasonable for the ALJ to conclude that cashiering was a main function of her job and to classify her past relevant work as cashier.

Upon review of the record and the parties' arguments, the Court will remand for further proceedings because the record is ambiguous as to whether Plaintiff performed cashiering most of the time while at Dollar General. *See Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001) (concluding that ALJ lacked substantial evidence to classify claimant's prior work as a cashier where, despite some confusion in the record, the claimant's "testimony made it clear that she had never exclusively worked as a cashier"). True, Plaintiff's work history report lists her job title at Dollar General as "manager"; it makes no mention of her clerk position. (A.R. 279). However, because the work history report covers Plaintiff's entire time at Dollar General from 2012-2014, it would appear that she also held the clerk position during this time. (A.R. 246). Accordingly, it is unclear whether Plaintiff performed the duties listed in the work history report—stocking shelves, gathering baskets, *etc.*—for both positions or only for the manager position.

Adding to the uncertainty is Plaintiff's testimony that she performed "checking" duties for both the clerk and manager positions. (A.R. 43-45). At no point did Plaintiff specify for either position whether cashiering was her main task, nor did she mention most of the other duties listed in her work history report. Based on the RFC that required Plaintiff to have the ability to "sit or stand at will," it is important to know for purposes of step four what duties Plaintiff had and how often she performed them to ensure that the limitations that the ALJ assessed were compatible with her past relevant work. (A.R. 23); *see Pinto*, 249 F.3d at 845 (noting that step four "requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work"). Notably, Plaintiff stated on her work history report that she walked and stood for her whole shift and sat "during lunch." (A.R. 279). If it turns out that the Plaintiff spent most of her time on duties other than cashiering that did not give her the option to sit or stand at will, it would appear that cashiering would not be her past relevant work.

The Court acknowledges Defendant's argument—that Plaintiff has the burden at step four and has not provided "evidence establishing that cashiering was not a main function of her job"—

but Defendant overlooks, as discussed above, that the ALJ still has the duty to make the required factual findings to support the decision and the duty to develop the record where, as is the case here, the evidence is ambiguous. (ECF No. 13, p. 5). For the reasons given, the Court concludes that the ALJ's decision to find Plaintiff capable of past relevant work as a cashier is not supported by substantial evidence.

### B. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints. (ECF No. 11, p. 14).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 24). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints as follows:

> At the hearing, the claimant alleged disability primarily due to back pain with radicular pain and numbness in both legs, worse on the right (Hearing Testimony). She treats her back pain with exercises (*Id.*). She also alleged neuropathy affecting

> her upper extremities from her elbows to her fingertips (*Id.*). She treats her neuropathic symptoms with gabapentin (*Id.*). She alleged disability to left shoulder pain with difficulty reaching above shoulder level, but can reach below shoulder level despite some pain (*Id.*). She has treated her left shoulder symptoms with injections and physical therapy (*Id.*). She testified her right thumb "is doing pretty good" after being surgically treated (*Id.*). She testified she has maintained her sobriety since being discharged from an alcoholic treatment facility in November 2020 (*Id.*). Prior to this sobriety date, her longest period of abstinence was from January 2019 to March 2020 (*Id.*). She testified the swelling in her legs have improved (*Id.*). The claimant estimated she could sit up to 1½ hours, stand up to 1½ hours, and walk about 20 feet (*Id.*). She alleged arthritis in her hands (*Id.*). Due to asthma, she uses a rescue inhaler three times per day (*Id.*). Due to medication side effects associated with Lasix, she testified she must urinate every 45-to-60 minutes (*Id.*).

(A.R. 23-24).

Thereafter, the ALJ conducted an extensive review of the record evidence, noting among other things, the following:

> With regard to the claimant's lumbar impairment, the objective medical evidence is not consistent with her allegations that she cannot sit, stand or walk for prolonged periods. Rather, the claimant's symptoms associated with her lumbar impairment improved with care and did not preclude her from walking with an unassisted gait. . . . [The] clinical signs and laboratory findings are consistent with the claimant's allegations of some back pain. . . . In April 2018, the claimant underwent gastric bypass surgery (Exs. 6F/6-7 and 7F/11). Postoperatively, she healed normally (Ex. 7F/11-15). In January 2019, the claimant reported her lumbar radiculopathy and neuropathy in her feet had improved following her gastric bypass surgery due to weight loss (Ex. 6F/7). Accordingly, the claimant's lumbar symptoms had significantly improved.
>
> . . . .
>
> Remaining clinical examinations documented tenderness and hypertonicity in the bilateral lower lumbar region, but largely normal gait (Exs. 8F/31, 9F/6, 10F/1, 11F/3, 16F/2 and 20F/5). She also reported exercising by walking three-to-four times per week (Ex. 18F/57). Recent treatment notes indicate the claimant denied back pain (Ex. 21F/82).
>
> . . . .
>
> With regard to the claimant's liver impairment, the objective medical evidence is not wholly consistent with her allegations of chronic fatigue and inability to sit, stand or walk for prolonged periods.
>
> . . . .
>
> She ultimately underwent two paracentesis procedures, the first on January 11, 2019 with aspiration of 5 L of ascitic fluid and the second on January 31, 2019

> with aspiration of approximately 600 mL of ascitic fluid (Exs. 5F and 6F). Laboratory studies of this fluid were consistent with portal hypertension (*Id.*). The claimant reported feeling better following these procedures (*Id.*). The claimant's abdomen was soft and nontender with improved distention (*Id.*). Her lower extremity edema had also improved to 2+ edema (*Id.*).
>
> . . . .
>
> Notably, in July 2019, the claimant's gastroenterologist advised the claimant she no longer needed specialist care for her liver impairment (Ex. 12F/8). As such, she was referred to her primary care physician for ultrasound monitoring (*Id.*). This treatment recommendation indicates the claimant's liver impairment had improved.
>
> . . . .
>
> The claimant entered a treatment program for alcohol withdrawal and dependence (Exs. 22F and 23F). As discussed, the claimant subsequently maintained her sobriety (*Id.*). She testified the swelling in her legs have improved (Hearing Testimony). In sum, the claimant experienced worsening alcohol and liver-related symptoms in January 2019 and September 2019; otherwise, the claimant was largely sober during the relevant period and her liver function improved, as documented by laboratory findings (*Id.*). For this reason, the claimant's allegations of disabling fatigue are not consistent with the evidence of record.

(A.R. 24-26).

The Court concludes that the ALJ provided "findings sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.").

The ALJ reasonably relied on inconsistencies between Plaintiff's complaints and the objective evidence—such as reports of improvements in the medical record and the cessation of pain—to not fully crediting her testimony. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between Morgan's testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined Morgan's credibility."). Likewise, the ALJ likewise reasonably concluded that the objective clinical

findings did not support the degree of impairment that Plaintiff alleged. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Plaintiff raises several objections to the ALJ's conclusions. She argues that she received epidural injections in her spine in 2020 and reported them as not helping her back pain, which undermines the ALJ's assertion that her 2018 gastric bypass surgery improved her back pain. (ECF No. 11, p. 15, citing A.R. 612). However, the record (A.R. 612) that Plaintiff relies on regarding her epidural injections is from a November 7, 2018 follow-up visit—thus prior to the January 2019 visit that the ALJ cited (A.R. 24, 411) to note that Plaintiff reported improvement following her surgery. Similarly, Plaintiff incorrectly asserts that the ALJ improperly emphasized her normal gait pattern during a June 2019 consultative examination. (ECF No. 11, p. 16, citing A.R. 25). Instead, the ALJ correctly summarized this record, noting that Plaintiff walked with a limp but did not use an assistive device and was able to toe heel walk. (A.R. 24-25, citing A.R. 643). Lastly, Plaintiff generally advocates for a different interpretation of the record, arguing that her symptoms were more severe than the ALJ found. But such argument, at most, presents another "rational interpretation" of the record, which means that "it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Accordingly, the Court concludes that the ALJ provided legally sufficient reasons for not giving full weight to Plaintiff's subjective complaints.

**C.   Dr. Christine Battaglia**

Plaintiff next argues that the ALJ erred in evaluating the opinion of Dr. Christine Battaglia regarding Plaintiff's limitations. (ECF No. 11, p. 17). Specifically, Plaintiff asserts that the ALJ failed to properly address the supportability and consistency factors. (*Id.* at 19).

Because Plaintiff applied for benefits in February 2019, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (AR 118). These regulations set "supportability"

and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

1      With these standards in mind, the Court now considers the ALJ's reasons to discount Dr.

2 Battaglia's opinion:

> Christine Battaglia, D.O. submitted a medical source statement dated January 2020 (Ex. 13F). Dr. Battaglia opined the claimant can sit for two hours, stand and walk for four hours, and must lie down or elevate her legs for 15 minutes every two hours (*Id.*). She opined the claimant was unable to stand for long periods (*Id.*). She opined the claimant can reach/grasp, handle and feel for two hours at a time for a total of four hours each in an eight-hour workday (*Id.*). She opined the claimant can push/pull for 30-minutes at a time for a total of two hours in an eight-hour workday (*Id.*). She opined the claimant can perform fine finger manipulation for 30-minutes at a time for a total of four hours in an eight-hour workday (*Id.*). In supporting her opinion, Dr. Battaglia noted the claimant's bilateral neuropathy, cirrhosis and abnormal EMG findings (*Id.*). For the same reasons discussed regarding Dr. Sharma's medical opinion, the undersigned finds Dr. Battaglia's medical opinion inconsistent. Further, the claimant's EMG of her upper extremities showed mild and minimal findings and the claimant generally exhibited full strength. Accordingly, Dr. Battaglia's manipulative limitations are overly restrictive based on the objective medical findings. While the claimant presented with some edema and experienced infrequent liver-related exacerbations when abusing alcohol, her liver impairment was generally well managed with medication during the relevant period. Accordingly, Dr. Battaglia's opinion that the claimant is unable to stand and walk for prolonged periods and must elevate her feet every two hours is overly restrictive.

(A.R. 29, *see* A.R. 687-88).

The ALJ first concluded that Dr. Battaglia, who treated Plaintiff, supported the opinion by noting Plaintiff's bilateral neuropathy, cirrhosis and abnormal EMG finding.[3] However, as to consistency, the ALJ reasonably concluded that other evidence undermined the opinion. The ALJ first deemed Dr. Battaglia's opinion inconsistent for the reasons discussed in evaluating Dr.

---

[3] As the Ninth Circuit has noted, "The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 792 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Here, there is no argument that the opinion at issue was found to be equally well-supported and consistent with the record as another but not exactly the same.

Sharma's medical opinion. In addressing that opinion, the ALJ found Dr. Sharma's assessment of Plaintiff's abilities partially consistent with record evidence showing medical improvement and normal examination findings, except that the ALJ concluded that even further limitations were warranted based on evidence concerning Plaintiff's intermittent radiculopathy and edema. (A.R. 28, 644).

Further, the ALJ deemed Dr. Battaglia's opinion inconsistent with other normal findings, concluded that it was contradicted by Plaintiff's ability to manage her liver impairment with medication, and reasoned that it offered overly restrictive limitations in light of the objective medical evidence in the record. Moreover, it is worth noting that Dr. Battaglia's opinion was just one of the medical opinions that the ALJ reviewed for purposes of determining whether Plaintiff was disabled. In addition to Dr. Sharma's opinion discussed above, the ALJ also found two state agency consultants' opinions partially consistent with the record evidence. (AR 29, citing Exs. 1A, 2A, 5A, 6A).

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's decision to discount Dr. Battaglia's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

**D. Remedy**

Plaintiff argues that this matter should be remanded for further administrative proceedings and does not request an award of benefits. (ECF No. 11, p. 21). The Court concludes that a remand for further proceedings is appropriate because the record was not fully developed as to Plaintiff's past relevant work.

**II. CONCLUSION AND ORDER**

For the reasons given, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED. On remand, the Agency is directed to conduct further proceedings to develop the record regarding the duties Plaintiff performed while a clerk and manager at Dollar General, including how much time Plaintiff spent cashiering. If it is determined that Plaintiff is incapable of her past relevant work, the Agency shall proceed to step five of the sequential evaluation process, considering whether Plaintiff is capable of any other

1  work. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against
2  Defendant.

IT IS SO ORDERED.

Dated: **January 26, 2023**           /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE

13